Thank you, Your Honors. May it please the Court, my name is Frank Jackson on behalf of the appellant, Kevin Rodriguez. We're here today to ask this Court to reverse the District Court's dismissal of Kevin Rodriguez's case based upon failure to state a claim. We submit that was a wrong determination and we're asking the Court to reverse it. Before I forget, if I may, I'd like to reserve three minutes for rebuttal. Mr. Reeve. Yes, sir. You just said something that perked a quick question. You want the District Court's decision reversed, is that correct? That's correct. So you want to go back to the District Court? No, we don't. We want them to be, their decision to be overruled, if you will, and for this Court to step in and make the determinations that the District Court should have made, specifically to address Mr. Rodriguez's request for declaratory judgment. Declaratory judgment to say what? To say that the revised Organic Act, Section G, vested exclusive jurisdiction in the 32nd legislature of the Virgin Islands to determine the qualifications of the members that were elected into that body. I thought he said that. No. Well, what he said, Your Honor, is that Mr. Rodriguez never became a member of that body because he never took an oath of office. And an oath of office was a prerequisite to becoming a member of that body. Okay. Maybe we're mincing words. I thought he said it's up to the 32nd legislature to make the decision as to who should be seated as a senator between the two individuals who were popularly elected. Well, and what he said, Your Honor, is that Mr. Rodriguez was never made, was never a member, and therefore, it was the court who was allowed to make the decision with respect to whether or not Mr. Rodriguez even brought a case that was cognizable before the court. Instead, he dismissed the case, saying that there was he had failed to state a claim. Specifically, the court determined that an oath was required before those persons elected became actual members of the 32nd legislature. Right after the judge made a decision, you called the president of the 32nd legislature after the opinion was posted to ask that you be given an oath. To be allowed to be the oath. And the 32nd legislature, through its president, said no, that there were outstanding injunctions still remaining and that the case was still before the district court. The district court had made that determination. And therefore, the legislature was not going to impose itself where the court is still in addressing the issues. And so the legislature refused to grant, to give him the oath. If the injunction were, if the injunctions were dissolved. Yes. It would then be pursuant to 6G, the decision of the legislature to determine whether your client is a member, meaning does he have the qualifications set forth in the revised Organic Act. And after that, it would be their decision whether to administer the oath or not. Is that correct? Our position is that by the judge saying that he was not a member, the judge, the district court judge sort of has taken the position that the district court did not have the jurisdiction to make that determination, thereby leaving it to the legislature to make that determination. You're not happy with that? Excuse me? You're not happy with that? Not at all, Your Honor. Do you want the judge to decide that you should be the senator? Of course not. We want the legislature to decide that. For the legislature, let me ask you a question. If we deemed that the matter as it stands before us is moot, I presume since the legislature is holding in abeyance a decision with regard to either seating you or seating, is it, how do you pronounce the name, Saroy? Saroy. Saroy, okay. And seating Ms. Saroy, you'd have no problem with that, right, because ultimately the legislature would be making a decision. But if you do have a problem with that, then that means that your problem isn't merely putting it in the hands of the legislature to decide. It's putting it in the hands of the legislature in a procedural posture that you believe your client should have, and that is pre-litigation. Your Honor, what we're saying is the judge should not have dismissed the underlying Saroy matter for mootness. By dismissing it for mootness, that allowed all the decisions of the Superior Court and the Virgin Island Supreme Court to remain in effect, i.e., the injunctions. Are you standing to argue that a dismissal for mootness of parties that you don't represent? What I'm saying, Your Honor, is the district court erred when it dismissed that case for mootness as opposed to dismissing that case. What if those parties are content with that decision? That doesn't address the legal issue that's before the Court, i.e., whether or not the parties are that that action should have been dismissed for mootness. Let me put that another way. Do you actually have standing to argue that a case dismissed against other parties was incorrect? We have standing to argue that the basis of the dismissal of those parties for mootness was a wrong decision, that the basis that it should have been dismissed was a lack of subject matter jurisdiction. Wait, wait, wait. Let's talk about the Saroy case for a second. There were the board of election defendants and Mr. Rodriguez was a defendant. Yes. As I understood the district court's opinion, it found it was moot as to the board of election defendants because it was a challenge after the board of elections authority sort of evaporated because it was post-certification. Whether that's right or wrong, we don't have to debate. But that was the reason for mootness as it related to those parties. As it related to Mr. Rodriguez, the Court talked about the fact that it wasn't going to interfere with what a coordinate branch of government was going to do vis-a-vis him. So there is a mootness dismissal, but that is within the subject matter jurisdiction of the Court because 6G is not a stripping of subject matter jurisdiction. It is an allocation of authority. Do you agree with that? Of course. Yes, it's an allocation of authority. So if that's the case, then it's not a subject matter jurisdiction problem that goes on in CERO. So the district court acted appropriately, wouldn't you say? It had Federal question jurisdiction over the revised Organic Act. It then looked at the justiciability of that dispute, found as to the defendant board of electors that was moot because it was post-certification. But then when you got to your client, isn't it a fact that really what the district court said is I'm not going to weigh in on this because of it being a prerogative of the coordinate branch? We might use political question nomenclature, but wouldn't you agree that that's really what happened? Your Honor, what we say happened is the Court failed to address our request for declaratory judgment because we also requested injunctive relief. And the Court said, as the Court is indicating, that because the district court did not want to interfere with the rights of the legislature, they were not going to enjoin the legislature from doing anything. They were not going to issue the injunction. But they did not thereafter address the issues of the declaratory relief we were seeking, i.e., the rights of the parties. Specifically, who, be it the courts or the legislature, should make the determination of the qualifications of a duly elected, duly certified candidate for office. But given the language of 6G, how could this particular issue be resolved otherwise? The language is very, very clear with regard to the authority of the legislature. Are we to put that aside? What the judge did to be able to address that, because the language is very clear and we agree with that, what the Court did instead is say that in addition to all of the qualifications set forth in 6G, an oath of office is necessary before that elected official can take his seat. And we agree an oath of office is necessary before that elected official can carry out all the duties of his seat. Not that he is not now a member of that 32nd legislature, but he has to take an oath at some point in time to be able to carry out the duties of the 32nd legislature as a senator. But that theory means that as soon as you're elected, your status goes from candidate to member, and you've eliminated the whole concept of member-elect. Not really. It's not actually as soon as you're elected. It's post-certification of your election results. And then you are a member-elect, and you will only become a member, if you will, at the time your term comes into effect, i.e., January 9th, 2017. I'm so sorry. Everything that you showed us in your papers, the allusion to the Federalist Papers and so forth, doesn't speak to the interim step that you just mentioned, i.e., once certification happens, then you're in a different status. The analogy that you're trying to draw to other instances, whether it be the Senate, the House, the Founding Fathers and what they thought about this, doesn't seem to be a posit because it's clear that member-elect doesn't carry a portfolio. And what the district court was saying was you don't have status as member-elect, and there's clearly a distinction to be drawn between member and member-elect, hence the conclusion. So why should we disturb that? The only distinction, Your Honor, is this, is that a member-elect remains a member-elect until his term of office comes into effect, which was January 9th, and then he's a member. But it's with the oath. We submit not. We say an oath is part of the requirement, but the question of term and manner when the oath is administered is the question. And we submit the judge's instituted his decision as to when the time and manner should take place, as opposed to saying time and manner of the oath is a question for the legislation. I mean, what did you want Judge Gomez to decide? We wanted Judge Gomez to decide that under Rule 6g of the Revised Organic Act, that the court, no courts, had jurisdiction to determine the qualifications of members, and that a member is a member. That sounds fine to me so far. No court has jurisdiction to determine the qualifications of who should be a member of the 32nd legislature. Yes. And that an oath, the oath. Well, didn't he essentially say that when he said I'm not going to make this decision? That's a decision for the 32nd legislature. What he didn't do was declare the rights of the parties. What do you mean the rights of the parties? That it was the rights. He said that he would not step into the realm of the legislature because he was not going to order them to do anything. Well, because he said, you know, that's a coordinate branch of government, and he is not going to intrude in processes that belong to the legislature. But he did intrude. He intruded by saying that the legislature had not set a time and manner for the taking of the oath. And to the extent that they didn't do it, which is a legislative function, he will then decide the time and manner of taking the oath. What if there were no injunctions precluding him from taking the oath, that nobody actually entered an order of that nature like the Superior Court and the Supreme Court did? And we submit then the legislature would have seated him. They would have given him the oath. So your real problem is the fact that the injunctions exist. Am I correct? Exactly. Did you move to dissolve those injunctions? We submit that the district court, when it had the case removed from the Superior Court and the Supreme Court, had the obligation to address the question of the underlying jurisdiction of the Sarov party to even have brought that lawsuit. We submit that Rule 6g of the Revised Organic Act did not allow that lawsuit to be brought in in any court post-election, post-certification. My specific question is, as soon as that case, which was removed by you folks, as soon as it was removed, if that injunction was the impediment, why not make an application to dissolve those injunctions? Section 1450 of Title 28 gives the district court authority to do just that. And I didn't see an application to do that, because that's what sounds like is the impediment from your point of view. Yes, it is, Your Honor. And we say that our complaint itself, asking for declaratory judgment, the court had the obligation to give us all relief that we were entitled to under declaratory judgment, even if the court did not want to issue an injunction against the legislature. And so we submit that the court, by way of our complaint, by way of its own underlying obligation to determine jurisdiction, when the case came over by removal to it, the district court had the obligation to look and see whether or not that underlying court case even had a right to be filed in superior court. And once it was removed, the district court had the obligation to then determine whether or not they had subject matter jurisdiction. But by operation of removal, the removing party is representing that subject matter jurisdiction exists in the district court, because that's what a petition of removal says. And in fact, there is subject matter jurisdiction implicated because it's a Federal question. Your problem is that the court should not have decided, weighed in on the issue. But I don't understand how you can say the district court lacked subject matter jurisdiction when you folks were the removing party. It had subject matter jurisdiction to remove it, because it was addressing a Federal law. Okay. But once it removed it, then it had to look at the underlying jurisdiction of the case that now was removed to it and determine whether there was jurisdiction for that case to even be brought in a court. So when you say you're using the word jurisdiction in this latter phase of your comments as authority of a court to decide the point. Yes. As opposed to power of a court like subject matter jurisdiction, Federal question, et cetera. Yes, Your Honor. Okay. So you're saying that ultimately the superior court never had jurisdiction. So the district court here should have said the superior court never had jurisdiction. Yes. Exactly. You don't disagree that it's up to the legislature to determine the qualifications of its members based on residency? Yes, exactly. We think it's exactly the legislature's determination to make the determination with respect to the qualifications of its members. Here, the court intervened by saying that Mr. Rodriguez was not a member because he did not take the oath, and therefore, the legislature did not have the authority. Wait a second. I'm not sure that the court went that far. I think the court essentially said that it's up to the legislature to make that decision with regard to residency requirements. He didn't rule one way or the other, did he? No, he did not. But what by not declaring the rights of the parties and dismissing the Sorrell case for mootness, that allowed all determinations of the superior court and the supreme court to remain in effect. And what was in effect was injunctions, was enjoining Mr. Rodriguez from taking the oath. The legislature was chilled and said, we can't. In my reading of the case, the legislature can say, Mr. Rodriguez, you satisfy residency requirements. As soon as you take your oath, you will be a member of this body. I see nothing to prevent the legislature from making that decision. We agree. No, we think they should have. The legislature specifically said, this matter is before the court. We're not going to do it given these injunctions in effect, and the court has this matter before it. That shouldn't last very long now. And the injunction is also against your client from taking the oath. It doesn't actually, if you read the language, right? So according to the orders, the legislature could have made this judgment from your point of view. Yes. Could have potentially qualified him, and then your client would have said, well, I'm currently enjoined. I can't take the oath. So then you would have to make an application to dissolve that injunction, right? Exactly. But here's what I don't get about your argument. The Superior Court has the ability to review the Board of Elections' determinations. Yes? Pre-election, pre-certification. Well, it can't be pre-election, right? Excuse me. Post-election, post-certification. Right. So let's just let this go. Do we agree on that? We agree that post-election, post-certification, the courts can no longer make determinations with respect to the qualifications of candidates who have been elected. Isn't it actually when the legislature convenes, that's when the court, from your point of view, would not be able to weigh in? We say it both ways, Your Honors. We first say that post-election, post-certification, the law is clear. The exclusive determination of the qualifications of the members is the legislature. However, if the court maintained its jurisdiction at that point, even the Superior Court said, and we agree, that once the term of office comes into effect, whatever jurisdiction the Superior Court, Supreme Court had, they lose it upon the term beginning. So there's two points at which we say jurisdiction, we say it shouldn't have been there from the beginning, but it certainly was lost at the time the 32nd legislature's term began. So I have one question, very straightforward. You have two individuals who were popularly elected in the Virgin Islands. Who decides which one should be seated? We submit, we submit that Is it the court or the legislature? The legislature. Okay. Right, the legislature. All right, thank you. So I'm just back on this one point because I want to make sure I heard you correctly. So that means, according to you, the Superior Court had the ability to review the Board of Elections determination. Actually, I presume you'd argue that the Superior Court never had the ability to review the Board of Elections determination once certification occurred on November 22nd. That's correct. Is that right? Yes. So between November 22nd and January 9th, when the legislature convened, your point is no one had jurisdiction. The Superior Court didn't have jurisdiction, and then when it went up to the Supreme Court, they didn't have jurisdiction. And then when it was removed post, well, actually, when you brought suit on January 10th, and then removed the other action, that there was... Right, you'd say there was no ability to disturb it, right? So you'd say... Exactly. After November 22nd, nobody, no one could do anything. No courts could do anything. And that it's entirely within the purview of the legislature after November 22nd. Yes. How do you reconcile that with Bryan, though? Because Bryan v. Fox is a version of a Supreme Court case, and it says before the legislature convenes, the Board of Election has the power. And then it says that power will shift from the Board of Elections to the legislature pursuant to Rule 6G only after the election has concluded and the legislature has actually convened. So isn't that authority for the decision available to the court up until the time it convenes, and only after it convenes does it go back to the legislature? And I'm reading that from Bryan. Isn't that the way the version of the Supreme Court has interpreted that rule? Bryan is pre-election. Bryan case was brought pre-election, pre-certification. Our case is post-election, post-certification. But that language is talking about a shift of power. It's talking about it as a concept, looking at Section 6, the Board of Elections Authority, the legislature's authority, and making a decision that that power shift really happened on January 9th, not November 26th. So for a period of time until January 9th, you're saying a court could have acted, but once January 9th happened, no court should decide this. Is that your position? Well, we certainly agree January 9th, no court should decide. We do not necessarily agree post-election, post-certification, that a court still has jurisdiction to address the issue. Thank you. So you want us to overturn FOX, or do you think FOX doesn't go as broadly as was just suggested in the question? We think FOX is good law with respect to pre-election. We do not think it's good law post-election. It doesn't address the issue. All right. Thank you. Thanks. We'll hear you back on Roboto. I understand that we have Ms. Griffiths participating by phone. Is that correct? Yes, Your Honor. Good morning to you. And we will hear you. I understand there has been an adjustment of time. Yes, Your Honor. Well, I don't know if there's adjustments. Well, I believe you have ten minutes, as I understand it. And that seems to be agreed upon here in the courtroom, so please continue. Okay. Well, it's our position that the Superior Court did have jurisdiction, because there was no 32nd legislature until January 9th, 2017. So after the Board of Elections certified, knowing that there was a dispute with respect to residency, they certified, then the courts, of course, had not only the jurisdiction, but they had an obligation to step in and listen to the dispute. The fact that Mr. Rodriguez takes the position that the court must either, number one, get and have any jurisdiction whatsoever, or number two, had to relinquish their jurisdiction as of January 9th when the 32nd legislature was convened, doesn't make any sense, and it taxes the judicial system. It taxes all the systems. So there's a gap there. There is a gap. The Board of Elections had the powers, and there's a gap until the 32nd legislature convened on January 9th. And Rodriguez is enjoined by the V.I. Supreme Court from taking the oath. Well, where do we stand now? The 32nd legislature has obviously convened. We're post-January 9th. What is the authority that we now have to act? Well, Seller takes the position that, of course, the district court had jurisdiction, the superior court had jurisdiction, the V.I. Supreme Court had jurisdiction, and in response to Mr. Rodriguez's argument of federal supremacy, we took the position that out of due respect to the V.I. Supreme Court under principles of comity, that the legislature's position is that he is not a member of the 32nd legislature, and the court's position on the V.I. Court, he is not a member of the V.I. legislature. And, in fact, the district court ruled, you know, it's moot, but there's plan B. You can have the governor of the Virgin Islands call for a special election, which he did. Maybe I can ask a question. It's a little difficult to follow. Could you tell me what disagreement you have with the district court's decision that it is entirely up to the 32nd legislature to determine which of two candidates is qualified to take an oath and be seated as the next senator? Well, that decision or that part of the decision doesn't seem to parallel suggesting that the governor of the Virgin Islands call a special election. If it was up to the legislature to decide, then why say you have an option, Virgin Islands, you can have the governor call a special election, which he did. So it doesn't parallel. Wasn't the election called and conducted consistent with Virgin Islands law, as much as there was a vacancy that had to be filled? Yes, there was a vacancy to be filled and a special election was called. If I could ask you, if the injunctions were dissolved, and those injunctions are those that currently bar Mr. Rodriguez from taking the oath, if they were dissolved, what would happen? After the special election? Yes, currently. Right now, you've had your special election. As far as I know, it hasn't been certified. Am I correct? You're right. It has not been certified. So what would happen if the injunction was dissolved? Well, that is me stepping into the shoes of the legislature, but by law, Janelle Kaye Sorrow would take her seat in the 32nd legislature because invariably it's up to the voters. And all of these voters, there was no – all of the voters got to cast their vote again for a senator who was eligible to take the seat or a candidate who was eligible to take a seat in the 32nd legislature. But wouldn't the legislature have to decide under 6G whether in the first instance Mr. Rodriguez had met the qualifications? And if it were to decide he did not meet them, then it would turn to your client who, as I understand it, prevailed in the special elections if that election is certified, and then they would adjudicate her membership qualifications. Isn't that what would happen? Well, it's already been decided by the courts that he did not meet the qualifications, so it seems superfluous for the legislature to then call hearings and decide whether or not he met the residency qualifications. But, you know, on another note, residency isn't defined by 6G. So it's always the courts who define under the principles of Marbury v. Madison. It's the courts who define it, interpret a statutory term that has not been defined. But my question is, I'm back to, if the injunction is dissolved, it's your position that there's some determination by one of the decision-makers, Superior Court, Supreme Court, that he's not a member and therefore he's already been blocked? And is that because of the discussion about the need for an oath? I don't know that the term would be he's been blocked, but I believe that it's the equivalent of that election is null and void with respect to Rodriguez. What makes it null and void? Because if that were the case, somebody should have made an application to us saying that our appeal was moved. So what makes it null and void? He was ineligible to run in the first place, and there's been a special election. According to, you know, the government's proclamation, the special election was held, and the voters turned out and cast their vote. Yeah, but the governor's intervention, I know you would say it was at the behest of the invitation by the district court. But at the end of the day, I think the point is this is all going to be left to the, well, presumably one scenario is that it's left to the legislature to seat either Mr. Rodriguez or your client depending on whether it's moot or not. If it's moot, then that would seem to be the choice and doesn't by default go to one or the other. Well, my position is not that it's left to the legislature, that the courts, it's already in the ambit of the courts or the jurisdiction of the courts. So it wouldn't have shifted to the legislature until January 9th, but that comes down illogically to if that issue comes before the courts, they have to adjudicate it before the legislature convenes. Maybe I understood you. Is it your position that it is the district court that should determine whether candidates satisfy the two-year residency requirement? No. It's my position that it came in front of the superior court, it went to the Supreme Court twice, and that out of respect for our VI Supreme Court, that the district court should have never accepted the removal in the first place, although it had jurisdiction. All right, but it did. So who now determines that two-year residency requirement? Is it not the 32nd legislature, specifically the Senate? Absolutely not. It is not? It is not the legislature. There was no 32nd legislature until January 9th. This issue came before the courts before the 32nd legislature convened. So there was no 32nd legislature. But you do agree that the 32nd legislature has to determine the qualifications of those who can sit in that body. I think that after, not I think, after a member is sworn in, after a candidate or a senator-elect is sworn in and takes the seat and the issue arises after the 32nd legislature convenes, then it's in the legislature's hands. Because if it's convened, this person is already a member of that body. And, of course, it becomes a political question, and it should be the legislature to determine that, whether it's eligibility or wrongdoing or any other matter. Once that senator becomes a member of that legislative body, it's the legislature's responsibility. So you agree with Counsel for Mr. Rodriguez that the oath doesn't play a role in determining the ability of someone to sit? No, I disagree. I think the oath is important no matter who is taking an oath, whether it's a senator, whether it's a witness and a jury, whether it's the President of the United States. I mean, an oath is an important thing. That's what triggers an obligation and a duty to make decisions on behalf of the people as a fiduciary. So I do think the oath is a very important thing. And the senators-elect took the oath, and the 32nd legislature was then convened. Wouldn't the sequence for the legislature be essentially equivalent to presenting your papers? I have now identified as a member-elect. I satisfy the three qualifications. The body decides whether I have, and upon decision on that point, they then decide whether they're going to administer the oath and seat me. Isn't that the sequence you're describing? No. There was already in November, there was a dispute with regards to Mr. Rodriguez's eligibility. That's not my question. My question is a matter of procedure before the legislature, because you said in response to Judd Readaway's question that the oath is a very important thing, but I don't know that it was actually answering the question he was asking you. And so I've rephrased a question that his led me to have, which is isn't the sequence on the day the legislature is convened, you present yourself to the legislature, they look at your qualifications, do you meet the specified qualifications? If yes, they can then decide to administer the oath and seat you. Isn't that the sequence that happens? And maybe this question is better for the legislature. I think the question is probably better for the legislature. However, what's the sense of why, where does the court fit in then? Why bring a lawsuit? Why not just wait for somebody that if he's not eligible or questions have come up that he was ineligible, does everybody wait until the legislature convenes? No, my question was only at the time it convenes. As I understand the Bryan case, from the day before the election until the legislature convenes, the Board of Elections is the one that's deciding the issue of qualifications, and it appears that if someone was dissatisfied with the Board of Elections determinations, they could then get court review because the Board of Elections is not one of the three branches of government. But once the legislature convenes, then qualification decision-making is vested with them. That's what I understood the arguments to be. Am I incorrect? In fact. Unless the dispute arises before the legislature convenes, before the individual is a member of the 32nd legislature. Thank you. Thank you so much. You're welcome. Good morning, Your Honors. Kei Walker on behalf of the 32nd legislature of the Virgin Islands and Senate President Myron D. Jackson. I will refer to the parties collectively as the legislature. And today the legislature seeks that the Third Circuit affirm the holding of the lower court. Affirm the holding with regards to its decision regarding the oath, with regards to its decision regarding the status of Kevin Rodriguez as a member elect and not a member. And, of course, with regards to the lower court's decision to not issue an injunction forcing or attempting to force the legislature to do anything or to issue a declaratory judgment because there was no dispute as to the language or the meaning or interpretation of Section 6G. Is your primary argument now that as we sit here now, because the legislature convened on January 9th, that this matter is now entirely moot and we should merely affirm and the legislature is empowered at that point to then make its determination as to who it will seat? Somewhat, Your Honor. The legislature's position is that it was always empowered as of January 9th to take any action or to not take any action. In exercising its discretion, the legislature considered that there was already jurisdiction in the courts because of the timing of the Sorrowberry lawsuit. The legislature could have intruded and seated Kevin Rodriguez or not seated Kevin Rodriguez and make some determination with regards to his qualifications, or it could have let the litigation run its course. Now, of course, without, in the absence of this appeal, the trial court's decision below would have been the course that the litigation ran. For whatever reason, Mr. Rodriguez has now appealed this action, although he has abandoned his claim for injunctive relief requiring the legislature to do anything and is simply seeking a declaratory judgment on an issue for which there's no dispute. You asked for affirmance of the district court's opinion? Correct. So what would happen then if the ball is back in the legislature's court? Then the legislature would make a decision with regards to the seating of Kevin Rodriguez or the seating of Janelle Sorrow. But right now there's an injunction saying, let's say hypothetically the legislature found Mr. Rodriguez qualified. There's currently an injunction saying he can't take the oath. Does that mean in order for the legislature to be able to fulsomely exercise its authority, you would want those injunctions dissolved so that you can, not you personally, but the legislature can take its action? The legislature takes no position with regards to the injunctions. We didn't require, we didn't ask for them to be dissolved, and neither did Mr. Rodriguez. What if they were dissolved? I asked your adversary the same question. Legislature, the injunctions are dissolved. We have had a special election, not yet certified, but we've had it. Tell us what happens. If the injunctions are dissolved, it really does not affect the action of the legislation. The reason I say that is because the injunctions were never issued against the legislature. They were issued against Mr. Rodriguez. If the legislature were inclined to seat him on January 9th, it could have seated him or taken whatever actions were necessary to seat him, and Mr. Rodriguez would have to make a decision as to whether he was going to violate the injunctions issued by both the Superior Court and the Supreme Court. You say you disregard the injunction, basically. Well, we wouldn't disregard, the legislature wouldn't disregard the injunctions, and in fact, it didn't. What I'm saying is that if it were so inclined, it could have, because the injunctions technically weren't issued against the legislature. But his ability to actualize his membership, if you have chosen to seat him, would have been impeded. He could have not taken the oath. And I assume your position is an oath is a condition to be able to be a member. Is that correct? Correct. Correct. And so with that in mind, if these injunctions were in play, one could say if you're a purist on, you know, the separation of powers, one could, the legislature could say, hey, the Federal Court is interfering with our ability to decide who to seat and how to ensure they get a chair at the table. Agreed. The legislature could have taken that position, and it chose not to. What the legislature decided to do was to respect the ongoing jurisdiction of the courts, respect the fact that under its own rules, the rules of the 32nd legislature, which is consistent with the rules of the prior legislatures, is that the very same justices and or judge who issued the injunctions would have been the very same individuals who would have administered the oath. So what, if I may continue, although I'm out of time, what Mr. Rodriguez has never addressed, either before the district court or before this court, is that the legislature has its rules with regards to the oath, the timing of the oath, and how it's administered. Let's talk about those rules for a second. All right. Then I'll go beyond. You, in the appellate papers, Rule 102 is cited. Correct. Where is that available to the public, and was it brought to the district court's attention? The rules are available to the public through the legislature. It was not made a part of the record of the lower court. The lower court proceedings were very expedited. We had oral argument, and we went straight into briefings. I think the only exhibit that was really admitted was just a transcript of the territorial court proceedings. So how would one get Rule 102? You'd have to actually call the legislature. It's not on the website. Right. You could call it. You could request it. I believe there were times in the past where it was available on the website. It may not be available as of yet. Did it exist at the time the lawsuits were filed? It existed at the time that the lawsuit was filed against the legislature. It did not exist at the time that the lawsuit was filed by Soro and Berry. So this is a new rule? It's a rule that's repeated from legislature to legislature. Because the legislature is only a two-year body, each legislature, when it convenes, the first thing it does is it goes into session and passes its rules. And those rules are consistent with, as far as the oath is concerned, has been consistent with prior legislatures. Okay. I do have one other question back on Brian, and then I'll turn it over to my colleagues. You heard me quote some language from Brian about the shift of authority from the Board of Elections to the legislature up until the time the legislature convenes. Is it your position that from the time before the election until the legislature convenes, it's the Board of Elections' decision to adjudicate qualifications, and they can be reviewed by a court, but once the legislature convenes, the court's unable to adjudicate the qualifications because 6G said the legislature's the sole judge? That's not the position of the legislature. What is the legislature's position then? The position depends on the circumstances. Now, with regards to post-certification court actions, there is a brief window of time between post-certification and when the new legislature convenes. If there is an issue or a challenge like the one raised by Saru and Barry, the courts certainly have jurisdiction to consider that issue. We believe that the issue brought to the Third Circuit was misphrased. The issue is not whether the court had jurisdiction. The issue is whether the court's jurisdiction continued after the legislature convened. It's the position of the legislature that the court's jurisdiction continued. Now, had the legislature seated Kevin Rodriguez and had he accepted the oath, despite the fact that those injunctions were pending, I think one could argue that any court action would therefore be moot or the jurisdiction of the court would be divested because the legislature has now taken an action pursuant to 6G to determine the qualifications and to seat this individual. And I believe you can go to the case cited by Saru and Barry in its brief. It's a case out of Alabama. So how would the court know? So your position is the court has jurisdiction now? We could decide who your members are? No. My position is you have to look at the particular circumstances. In this instance, the legislature decided to not jump into the fray with regards to the seating of Kevin Rodriguez, but to let the litigation take its course up to a final decision. What I'm also saying is that if the legislature had done the opposite, if the legislature had actually seated Kevin Rodriguez and taken a position that he was qualified to serve and taken that action, then one of the parties to the litigation, presumably Mr. Rodriguez, would then file papers for dismissal or on the basis of mootness. But that means that the mootness doctrine would be determined by you, right? Because that would mean you have two lawsuits filed the same day, right, between November 22nd and January 9th. Pick a day, any day. Two lawsuits, both challenging different seats, right? So as to one lawsuit, the legislature decides to act. As to the other, the legislature says, oh, let's see how it plays out. So that means your position would be on January 10th as to one lawsuit, any court action, right, any court making a determination as to what you did or didn't do would not have an ability to act because it would totally be within the legislature's purview and it would be moot, whereas the other one, because you decided to sort of let it ride, so to speak, it would not be moot. That can't be how mootness works. But essentially that's what would happen, and you have conflicting state court actions that have come up in this case and been cited as research. For instance, you have the case that was cited by the Supreme Court in its opinion when it issued the injunction and found that there was judicial estoppel, and that was the case out of Kentucky where that state senate had actually seated the member and the court took the position that, yes, you seated him, but this issue is not moot, so now you've got an ongoing court litigation and you've got the legislature, the senate in that state that has seated this particular member. And then you have the case out of Alabama where that state court took the position that this issue is now moot because they seated this member who was in controversy. Hopefully you won't have any more court involvement, and what you do have is two popularly elected individuals elected by the people of the Virgin Islands, and now the matter goes back, let's say, to the senate. What is the process by which the senate will determine which of those two is going to be seated? That's something, that's a decision that the legislature will have to make, but I think it's important to note that the special election could not have occurred without the legislature's involvement. The special election had to be funded, and the legislature funded the special election. Well, it's the order over the dam now. There was a special election, you have a candidate. Exactly. So what I'm saying is that all through this litigation, what Mr. Rodriguez is arguing is that the legislature hasn't taken any action, when in fact it has, because the legislature funded the special election. The special election could not have moved forward without the involvement of the legislature. I assume you don't know how the legislature is going to pick between two elected candidates. Correct, and I'm not authorized as their counsel to make that statement today, but what I am saying is that once this litigation concludes, ultimately the legislature will have to make a decision, and it will make a decision that's in accordance with law. I would like to just follow up on something Judge Greenway asked you about, this hypothetical two people who were potentially able to assume the seat. As I understand your position, that the court can have jurisdiction after legislature convenes in circumstances in which the legislature has decided to step back, right? So every case would be the court's authority then is going to be contingent on a specific legislature's determination on a particular elected person, as opposed to the clean line that exists now that says it's the legislature's responsibility. And I think it's written in that way in part to make clear which branch of government is responsible for which decisions. Your scenario basically says when the legislature decides, we don't care if it's really a political question, go ahead, court, you can decide. It's going to be very sui generis, and there will be no real predictability on justiciability issues. And that's just the position of the legislature. And the reason I say that is because there are conflicting state opinions when these similar issues have arisen. You have the state court in Kentucky treating it one way, and you have the state court in Alabama treating it another way. But that's not the question really, right? I understand you cited to those two cases in response to my question, but that's not the answer to this question. The answer to this question is how do you deal with the inherent conflict that you're raising that mootness is essentially determined at the whim of the legislature? That's the key to the question. And how can we apply a rule that says, yeah, well, you know, they said it's okay this time, but it's not okay that time. That's not how mootness can be determined. Understood. But there's no party before you that has actually asked for this appeal to be declared moot. And in addition to that, when you, and if I may just step back and look and point the judges to just the circumstances of this particular case and the timing of the Sorrowberry action. Now, the Sorrowberry action was initiated before the 32nd legislature came into existence. As it stands before us in the Virgin Islands and in the Third Circuit, because I couldn't find an opinion that squarely addressed this issue as to if the legislature had acted or not acted. What I'm saying is that because there are conflicting opinions and based on the legislature's reading of Section 6G and the sole authority, as well as the Virgin Islands Supreme Court cases, such as Fox and earlier decisions by the district court and this court with regards to Mapp v. the legislature, Mapp v. LeWetz, part of the determination to be made is based on what action the legislature takes or doesn't take. Now, in the instance of Mr. Rodriguez, had the legislature seated him on January 9th or any time shortly thereafter, I think there could be an argument made for mootness. Of course, that would raise additional issues, because the seating of Kevin Rodriguez under these circumstances where there's been a valid challenge to his standing qualifications to serve would have invited other litigation. And the authority that's granted to the legislature under 6G is not entirely as exclusive as Mr. Rodriguez would describe. Sole judge. How much more exclusive could you get? But then I also look at the district court's opinion in the Mapp v. LeWetz litigation, and there's language in that opinion that states that if you seat a member who is not qualified, and that would be qualified under the revised Organic Act, then the legislature and, of course, that member is subject to litigation. Well, that member is subject to expulsion. Is subject to expulsion. As opposed to exclusion, which is what's theoretically at issue here, is Mr. Rodriguez being excluded prior to the time the legislature has adjudicated his membership. Correct, but pursuant to that opinion, that member in the legislature is also subject to litigation filed by any taxpayer. What you're suggesting seems to be entirely inconsistent with Brian. Brian seems to say, Judge Schwartz read it before, that there's a date certain that things change, and that's the date that the legislature convenes. What you've been suggesting, maybe I'm the only one who hears it this way, but certainly to me is that Brian is wrong, and that in order for us to rule as you suggest, we have to implicitly overturn Brian. I don't know how that would happen, but how do you reconcile Brian with what you're suggesting? That's not what I'm saying at all. With regards to Brian, when you have that window between post-certification and the convening of the legislature, if someone were to file an action just like Sarul Berry did, the court's jurisdiction is clear and undeniable. Now, when you, depending on the circumstances of a particular case, if you had the legislature convened and then Sarul Berry filed an action afterwards, then the court's jurisdiction is not clear and probably nonexistent, because, of course, Rodriguez would have already have been seated. Now, let's, if we look at circumstances, for instance, if court's indulgence, if you have a circumstance under which you have before us today where the action was initiated post-certification, but prior to the 32nd legislature convening, what I'm saying is that the issue is not whether the court has jurisdiction. The issue is whether the court's jurisdiction is ongoing, whether the court's jurisdiction is automatically divested when a 32nd legislature convenes, and the legislature's position is it's not, it's ongoing, and the legislature's position is consistent with the holding in the Kentucky case. Now, had the legislature seated Kevin Rodriguez, you basically have two branches of government addressing the same issue and probably battling for authority over the same issue, because you could have the courts taking the position that the jurisdiction is ongoing, and despite the fact that you've seated Kevin Rodriguez, we're going to continue to consider this issue, or you could have the courts taking the position that this matter is moot, we no longer have jurisdiction because you've seated Kevin Rodriguez. I can't tell you what would have happened because we don't have precedent for it in the territory. And as far as I know, we don't even have precedent for it in the circuit, but we do have other conflicting state opinions. If one's seated, isn't that a presumptive determination that he is qualified to be a senator? I'm sorry? If he is seated, isn't that a presumptive determination that he is qualified, sir? It is. It is. Just one quick thing. Your position is that the legislature is a coordinate branch of government, as that is defined under the political question document? Correct. And that has always been the position of the legislature, and when confronted with a decision as to whether to get into a battle or get into a situation where two co-equal branches of government are considering the same issue, the legislature declined to do so. I had asked your co-party about the sequence. Am I right how the sequence would go? Under normal circumstances, a person would present themselves, demonstrate their three qualifications are satisfied, they would make a decision if that person were qualified, and then the oath would be administered. Is that correct? Correct. But, again, it would still be up to the legislature to determine how it would do that. That decision still sits with the legislature, so the legislature could very well review the qualifications and then make a determination as to whether to administer the oath, or the legislature could actually seat the member and convene proceedings. Without reviewing their qualifications? They could administer the oath before reviewing the qualifications? I believe they could. And, of course, the difficulty with exercising a second option is that due process rights attach after you've seated this member, whereas when the individual is still a member elect and have not been seated and have not been administered the oath, then they don't have the same due process requirements that a member would have. But, ultimately, it would be up to the legislature. Thank you so much. Thank you very much. We'd like to respond to some of the points made. Specifically, we do not think the legislature has the authority not to assume the power that is given under 6G. They cannot abrogate that authority to the courts. They have it. They can't abrogate it. That's not allowed. We would submit under 6G. So the legislature just can't sit back and let the courts decide, and then after they decide, then we'll make a determination. We submit first, as I said, that the courts had no jurisdiction on the underlying matter. But even if they did have jurisdiction, they lost it January 9th, 2017, when the legislature took its seat. The legislature was bound to then administer the oath to a member, and thereafter, if there was a challenge, which Saro could have done, she could have taken her challenge with respect to Rodriguez's qualifications to the legislature once Rodriguez was administered the oath and seated, and then the legislature could have had a hearing, due process hearing, and made a determination on that issue. If the court lost jurisdiction, the court then couldn't dissolve these injunctions. The court would have – what we submit is that the district court, once it determined that there was no subject matter jurisdiction for it to even entertain the case, then as a part of that, it would have dissolved the injunctions. Thank you. Right. So the legislature can't have it this way, as the courts have indicated. You have to be able to know with certainty what's going to happen, and it's not depending on the circumstances. The Kentucky case that was cited by counsel, in that particular case, there was a statute that specifically said the Kentucky court by statute, Kentucky legislature by statute, allowed the Kentucky courts to continue their jurisdiction by way of statute if the issue was raised. Where there is no statute, we say they cannot just continue their jurisdiction. With respect to the rules of the legislature, by definition, rules of the legislature are only applicable to members. So once you start referring to the rules of the 32nd legislature, those rules are only applicable to members, and by definition, you are then saying that Mr. Rodriguez is a member subject to these rules. If he's not a member, then he certainly can't be subject to the rules of the legislature. He has to be a member to be subject to those rules, and we agree. Once he's subject to those rules, those rules will stay, and they do stay, time and manner of taking the oath. The legislature always has that responsibility. The court cannot assume that responsibility where the legislature has failed to establish a statute that determines the time and manner. In the Federal system, of course, there was a problem under the United States Constitution. What is the specific outcome that you are requesting in this case? What we're specifically asking is that this Court declare the rights of the parties post-election, post-certification, and that was that the exclusive body to determine the qualifications of the members was the legislature, that the Court had no jurisdiction to go to delve into that particular issue. It still is the legislature, is that right? It still is the legislature. We always say it's the legislature. You're content to go back and have your qualifications determined by the 32nd legislature. Of course. That's where we say they should be determined. Once we've given you two scenarios. And to determine whether Sarrao should be seated. If you first address the question of Rodriguez, and we submit if you determine that he's qualified and seated, then the special election that was subsequent to that was a knowing boy. You don't even, you know, that's what happens to Sarrao. This is basically affirming the district court, then? No, because the district court would not allow the oath to be taken. And, therefore, Rodriguez was never able to become, while he was a member of the 32nd legislature. Had your druthers, you would go back to the 32nd legislature, which can determine that you are qualified, that Rodriguez is qualified, popularly elected. You may be seated as soon as you take an oath. What's wrong with that? We agree with that. We agree with that. The issue goes to the 32nd legislature, and then they will administer the oath. Or the legislature can say, no, you may not be seated because you failed the residency requirements, and, therefore, the special election will be held valid. We say no. They could not have, they cannot refuse to seat him. The board of election determines the qualifications. Once the legislature's term begins. If they determine the qualifications, in my scenario, they meet and determine that Rodriguez is not qualified. That's within their province, is it not? The board of elections determined that Rodriguez was qualified. The board of elections, the legislature. The legislature will, at the time of their convening, have the right to determine the qualifications of Rodriguez. But they do it as him being a member of the legislature, thereby enabling him, as was suggested, to a due process hearing before the legislature for the legislature to address the issue. Here's what I don't get in response to Judge Fuentes' question. I would have thought your answer would be, yes, I want you to deem the case moot, or, yes, I want you to affirm. And either of those scenarios would appear to leave it, leave the entire determination of who is qualified, who's not qualified in the hands of the legislature. But it seems, when I hear you respond to his question, that you want something a little more. You don't want us, for instance, to say it's moot, and, therefore, it goes back to the legislature to determine. Because if that happened, then it's entirely up to them as to who would be seated. And, you know, this determination by the court would be essentially not a nullity, but we'd be stepping aside, letting the legislature make the determination. Is that what you're really asking for, so that, in essence, you're willing to go toe-to-toe, so to speak, with Ms. Saro before the legislature to see who is the correct person to be seated? We certainly believe that the legislature is the body to make that determination. We believe that the court, this court, should determine that the district court had no jurisdiction. It had jurisdiction for the removal. But once it looked at the underlying action, it would look at 6G, revised Organic Act, and say to the parties in declaring their rights, this court has no authority to determine the qualifications of its members. Therefore, we refuse to. So you don't want us to affirm the district court's opinion, then? No. No? Okay. No. Okay. Thank you. Thank you. Just a couple of words. We understand the gravity of this matter and the need for alacrity, so we will be trying to rule on this as expeditiously as possible.